IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| SHANNON MARTIN SNEED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:15cv591-SRW |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[2]

Plaintiff Shannon Martin Sneed commenced this action on August 13, 2015 pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner denying her application for disability insurance benefits. (Doc. 1, Doc. 14). Plaintiff alleged a period of disability beginning on December 1, 2010. (Doc. 14 at 4; Doc. 17-2 at 13). Administrative Law Judge Sheldon P. Zisook ("ALJ") found, *inter alia*, that the plaintiff has the following medically determinable impairments: bilateral carpal tunnel syndrome, depression, and obesity.[3]  (Doc. 17-2 at 15).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the defendant in this lawsuit. The Clerk of Court is DIRECTED to take the appropriate steps to reflect this change on the docket sheet.

[2] For the purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time of the ALJ's decision and the filing of this appeal.

[3] The plaintiff does not challenge the ALJ's findings regarding obesity.  Accordingly, the court makes no findings as to the ALJ's analysis or determinations with respect to this medically determinable impairment.

The ALJ determined that the plaintiff "does not have a severe impairment or combination of impairments." (Id.). On February 13, 2014, the ALJ issued an adverse decision.[4] (Id. at 13-20). Because the ALJ determined that plaintiff has no severe impairments, he did not proceed beyond step two of the Commissioner's five-part disability analysis, discussed *infra*, and he concluded that the plaintiff is not disabled because she does not have a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(i-v). The Appeals Council denied plaintiff's request for review on June 19, 2015, and the ALJ's decision became the final decision of the Commissioner. (Id. at 2-5). This case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to entry of final judgment by the Magistrate Judge. See 28 U.S.C. § 636(c). (Doc. 11, 12). For the reasons stated herein, and based upon its review of the record, the court finds that the Commissioner's decision is due to be remanded for additional proceedings.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Richardson v. Perales, 402 U.S. 389, 390 (1971); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant

---

[4] Plaintiff was represented by counsel at the hearing before the ALJ. (Doc. 17-2 at 13).

evidence as a reasonable person would accept as adequate to support a conclusion." Id. It is "more than a scintilla, but less than a preponderance." Id. A reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] decision for that of the [Commissioner]." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). In other words, this court is prohibited from reviewing the Commissioner's findings of fact *de novo*, even where a preponderance of the evidence supports alternative conclusions.

While the court must uphold factual findings that are supported by substantial evidence, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical,

physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993) (citing to a formerly applicable C.F.R. section), overruled on other grounds by Johnson v. Apfel, 189 F.3d 561, 562-63 (7th Cir. 1999); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis proceeds as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

Pope, 998 F.2d at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. Id.

## DISCUSSION

The plaintiff had recently turned 47 years old on the date of her hearing before the ALJ. (Doc. 17-2 at 30). According to the plaintiff's testimony, she injured her right hand in 1994. (Id. at 31). At the time, the plaintiff worked in a stock room for a manufacturing company. (Id.). She reached to retrieve a "fabricated part" from a shelf, her "wrist popped, and [she] felt immediate pain." (Id.). She started "overcompensating" with her left hand, and, as a result, she developed pain and a loss of function in that hand in 1996. (Id.). At the administrative hearing, and in response to a request by the ALJ, the plaintiff's attorney asserted in an opening statement that the plaintiff "basically was forcing herself to work to support her family with severe pain in both hands that has gotten her to the point now where she can't work. One hand is almost like a claw. The other can stay open for a little bit …." (Id. at 31-32).

In 1996, the plaintiff underwent surgery on her right wrist in an effort to obtain relief from carpal tunnel syndrome. (Doc. 17-10 at 55-62, 68-44). The plaintiff asserts that, in the years that followed, the pain in her wrists and hands worsened; on the date of her administrative hearing, she testified that she was in severe pain and that she had almost no use of her hands. (Doc. 17-2 at 32-35; see also Doc. 17-6 at 20-27). The plaintiff said that she takes 24 to 30 over-the-counter Ibuprofen tablets each day to help manage pain. (Doc. 17-2 at 33).

Because of carpal tunnel syndrome and pain in her hands, the plaintiff testified at the administrative hearing as follows: (1) she cannot dress herself without assistance; specifically, she cannot put on or button pants; (2) plaintiff cannot put her hair in a ponytail;

(3) she cannot cut her meat at meals; (4) the plaintiff lives with friends, and the friends do not permit her to hold glassware because she has a poor grip and has broken several glasses; (5) she is unable to "put [her] teeth in some days" without assistance, including on the day of her administrative hearing; (6) she cannot lift and hold a gallon of milk without dropping it; (7) she has difficulty brushing her teeth; and (8) she "can't push a vacuum … can't really do any dusting … [and does not] do the dishes because [she] drop[s] them and [she] break[s] them and the people who gave [her] a place to live – they can't afford for [her] to keep breaking stuff."  (Doc. 17-2 at 32-35).

The plaintiff also completed a "function report" in February 2013, which the ALJ references in his written decision.  (Doc. 17-2 at 17; Doc. 17-6 at 20-27 (functional report)).  Therein, the plaintiff explains, *inter alia*, that her carpal tunnel syndrome limits her as follows: (1) she wakes up every day in pain; (2) her hands "cramp closed" and swell, which makes holding anything "difficult;" (3) she bathes herself if her hands are "good;" (4) she cannot fasten the clasp on a bra; (5) she is unable to wash herself "properly" or comb her own hair; (6) plaintiff does not "go out socially anymore," although she was a happy, sociable person prior to her injury; (7) she has difficulty having sex and has low sexual desire as a result of pain and her inability to use her hands; and (8) she is afraid to pick up and hold her grandchild, who weighs approximately ten pounds, because she does not trust her ability to maintain a grip on the child.  (Doc. 17-6 at 20-27).  Before her injury, she took care of her family, had an active sex life, met new people, socialized, cooked, sewed, bowled, and was able to groom herself.  (Id. at 21, 27).

At the administrative hearing, the plaintiff's attorney argued that plaintiff suffers from "major depression" and that she has frequent suicidal thoughts, which led to a prior hospitalization. (Doc. 17-2 at 31). On examination by the ALJ, the plaintiff testified that, "all day," she has suicidal ideations and she feels "worthless" because she cannot care for herself or work to support her family. (Doc. 17-2 at 34). In response to the ALJ's question about her daily activities, the plaintiff said that she tries to spend time with her children, brush her own teeth, and remember to eat. (Id.).

The plaintiff argues three issues on appeal: (1) the ALJ's finding that the plaintiff does not suffer from a severe impairment is not made in accordance with applicable law or supported by substantial evidence; (2) the ALJ did not adequately explain his reasons for rejecting the opinions of consultative examiners, whom plaintiff asserts "identified more than minimal physical and mental impairments;" and (3) the ALJ improperly rejected plaintiff's allegation that she cannot afford medical treatment and, consequently, the ALJ made erroneous findings that the plaintiff's failure to pursue treatment for carpal tunnel syndrome or depression belies her credibility. (Doc. 14 at 1-15).

The underlying rationale supporting each of the ALJ's findings – from discrediting the plaintiff's testimony to the weight he assigned to the medical sources' testimony – is premised almost entirely upon the ALJ's determination that the plaintiff did not have good cause for failing to pursue medical treatment for approximately ten years prior to the ALJ's adverse decision. (Doc. 17-2 at 17-20). Thus, if the ALJ's determination that the plaintiff's lack of treatment is erroneous as a matter of law or is not based upon substantial evidence, the ALJ's decision must be remanded. The court considers this matter first, and the

undersigned concludes that the ALJ's findings that the plaintiff lacked good cause for failing to pursue medical care merit remand for additional consideration.

In response to a question by the ALJ, the plaintiff testified that she had not "seen a doctor" in six years because she does not "have the money to go back." (Doc. 17-2 at 35). The plaintiff explained her reason for not spending money on medical care: "I took care of my family. I'm sorry." (Id.). Plaintiff testified that she lives with a friend, who does not charge the plaintiff rent. (Id.). Prior to that living arrangement, the plaintiff was "on the street" because she "lost [her] house." (Id.). The plaintiff's decision to provide for her family and her inability to afford housing are material to her assertion that she is unable to afford medical care; however, the ALJ does not discuss these matters.

In his written decision, the ALJ determined that medical evidence shows that the plaintiff "has not had any medical treatment since September 2002, a period of more than ten years." (Doc. 17-2 at 17). In assessing the plaintiff's testimony that she is unable to afford medical care, the ALJ discussed the plaintiff's income between the years of 2003 through 2008. (Id.). The evidence in the administrative record on which the ALJ relies reflects the following annual earnings: $24,681.07 in 2000; $6,269.19 in 2001; $762.76 in 2002; $20,564.91 in 2003; $23,906.68 in 2004; $26,279.14 in 2005; $26,657.28 in 2006; $28,176.69 in 2007; $20,458.37 in 2008; $17,201.12 in 2009; $8,928.39 in 2010;[5] $511.25 in 2011; and no earnings at all in 2012 and 2013. (Doc. 17-5 at 18).

---

[5] Plaintiff alleges a disability onset date of December 1, 2010. After that date, the plaintiff had no substantial gainful employment, which the ALJ acknowledges in his adverse decision. (Doc. 17-2 at 15); see also 20 C.F.R. §§ 404.1520(b), 404.1572(a & b), 404.1574, 404.1575.

The ALJ implies that the plaintiff was not so "indigent" that she could not afford medical care, and he found that the plaintiff's failure to see a doctor or seek emergency room treatment "at a local county hospital … undermined the credibility of her allegations." (Doc. 17-2 at 17). The ALJ explains his finding that the credibility of plaintiff's testimony "that she was too indigent to receive medical care in her bilateral upper extremities" is "undermined" because "the claimant's earnings records indicated significant earnings from 2003 to 2008 that exceeded $20,000.00 per year." (Id. (citing Doc. 17-5 at 18)). The ALJ does not explain why annual earnings in excess of $20,000.00 self-evidently discredits the plaintiff's testimony that she could not afford medical care; it appears that the ALJ randomly chose that benchmark.[6]

The ALJ also does not explain why he chose to discuss only the plaintiff's earnings from 2003 through 2008, with the last year in that date range being still two years prior to the plaintiff's alleged disability onset date. The Commissioner is required to develop a plaintiff's medical record for twelve months prior to the application date. Robinson v. Astrue, 235 F. App'x 725, 727 (11th Cir. 2007) (citing 20 C.F.R. § 416.912(d)). The plaintiff filed her application on January 30, 2012 (Doc. 17-2 at 13), and the ALJ does not offer any rationale for his focus on the plaintiff's ability to afford medical care four years prior to that date. Had the ALJ limited his scope of review to the plaintiff's earnings for

---

[6] The Commissioner does not identify any evidence, and the court could not locate evidence in the administrative record, to support the ALJ's finding that the plaintiff could afford medical care because she earned in excess of $20,000.00 per year for some of the years she did not seek medical care. There is also no evidence of record regarding the plaintiff's debts or other financial responsibilities during that time that might affect her ability to pay for treatment, except for plaintiff's counsel's opening statement and plaintiff's testimony at the administrative hearing that she took care of her family, including her children, and that she "lost" a house and, subsequently, became homeless. (Doc. 17-2 at 31, 34).

the twelve months prior to her application date, the evidence is uncontroverted that she had no earnings in 2011, which the ALJ acknowledges.  (Doc. 17-2 at 13).

A review of the record of plaintiff's earnings suggests that the ALJ selectively highlighted the evidence that supported his decision to discredit the plaintiff's allegation of poverty, but neglected to mention the evidence of record that the plaintiff often earned substantially less than $20,000.00 per year, and did not discuss the plaintiff's explanation for the reason she did not spend her limited earnings on medical care.  The plaintiff earned $6,269.19 in 2001 and $762.76 in 2002, and she earned only $511.25 in the three years following her alleged disability onset date in 2010.  (Id.).  The ALJ omits this evidence – the lack of earnings – from his determination that the plaintiff failed to show good cause for not pursuing medical care for carpal tunnel syndrome or extreme pain.

Moreover, the ALJ's finding that the plaintiff had "significant earnings" in excess of $20,000.00 from 2003 to 2008 is misleading at worst or unexplained at best. The plaintiff had annual earnings that ranged from a low of $20,458.37 (2008) to a high of $28,176.69 (2007) during the five-year span from 2003 to 2008.  The ALJ does not explain how annual earnings of between $458.37 and $8,176.69 more than $20,000.0 are a "significant" increase from annual earnings of $20,000.00, or how the plaintiff could have afforded medical care on those annual earnings, particularly in light of the fact that there is no evidence that the plaintiff had health insurance. The ALJ does not discuss the plaintiff's testimony that she was unable to afford medical care for herself because she took care of her family, and it is unclear whether he considered this testimony.

Also, it is not evident from the written decision that the ALJ considered the plaintiff's testimony and other evidence that she was homeless and that she would be "on the street" but for her friends who provide her housing at no cost. Finally, the ALJ did not develop the record or inquire at the hearing about the plaintiff's financial obligations from 2003 (the date the ALJ determined without explanation to be an appropriate starting point for assessing the credibility of plaintiff's allegation of poverty) until the date of the hearing, about when and why the plaintiff became homeless, or about the reasons behind the plaintiff's financial status during the time period between 2003 and the date of her administrative hearing on May 7, 2013.

Instead, in making an adverse credibility finding that underpins the ALJ's disability determination, the ALJ examined only a snapshot of the plaintiff's earnings during a period of time he appears to have selected at random.

As noted *supra*, the court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) (citing Strickland v. Harris, 615 F.2d 1103, 1106 (5th Cir.1980)).[7] With regard to the ALJ's finding that the plaintiff's testimony and allegations of her inability to afford medical care, the ALJ omits or mischaracterizes material evidence in the administrative record. An ALJ's decision is not based on substantial evidence, and improper legal standards were applied if "[t]he ALJ's

---

[7] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

11

inaccuracies and mischaracterizations taint the record." Webster v. Barnhart, 343 F. Supp. 2d 1085, 1093 (N.D. Ala. 2004); see also Baker v. Colvin, 2013 WL 1498978, at *5 (N.D. Ala. Apr. 4, 2013) ("The court finds that, because the ALJ mischaracterized the evidence relied on to discredit Mr. Baker's pain testimony, the ALJ's credibility determination is not supported by substantial evidence."). Moreover, when the inaccuracy or mischaracterization is the result of an ALJ's failure to acknowledge and discuss material evidence that conflicts with the ALJ's findings, the ALJ commits an error of law as the decision fails to explain the basis for the ALJ's conclusions sufficiently to permit a court to complete a meaningful review on appeal. See Cornelius, 936 F.2d at 1145-46 (the ALJ errs as a matter of law if the written decision lacks enough information for the court to review the ALJ's findings to ensure that proper legal standards were employed and that the factual findings are based on substantial evidence). In the absence of such a discussion by the ALJ, the court is left to guess at whether the ALJ considered the unfavorable evidence. Such is the case here.

"The claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (*per curiam*). Nevertheless, social security proceedings "are inquisitorial rather than adversarial." Sims v. Apfel, 530 U.S. 103, 111 (2000). The ALJ thus has the responsibility "to investigate the facts and develop the arguments both for and against granting benefits." Id. (citing Richardson v. Perales, 402 U.S. 389, 400-01 (1971)). The ALJ must specifically "develop the claimant's complete medical history for at least the 12 months preceding the month in which the application

was filed, and . . . make every reasonable effort to help a claimant get medical reports from the claimant's own medical sources when permission is given."[8] Robinson v. Astrue, 235 F. App'x 725, 727 (11th Cir. 2007) (citing 20 C.F.R. § 416.912(d)).

Also, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186 at *7 (July 2, 1996).[9] One such explanation that an ALJ is required to consider is that "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." Id. at *8. Based on the fact that the plaintiff did not seek medical treatment for approximately ten years, the ALJ determined that the plaintiff is not credible and assigned "little weight" to medical source testimony from a consultative examining physician and a consultative examining psychologist that supports plaintiff's testimony regarding pain and depression.[10]

---

[8] The ALJ may order a consultative examination but "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007) (citing Doughty v. Apfel, 245 F.3d 1274, 1281 (11th Cir. 2001)).

[9] Although they lack the force of regulation, Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); see, e.g., McCloud v. Barnhart, 166 F. App'x 410, 419 (11th Cir. 2006) (citing SSR 96–6p as authoritative).

[10] See Doc. 17-2 at 18-19; see also, e.g., Doc. 17-10 at 55-62 (physical and medical consultative evaluation by non-treating, examining physician Dr. Robert Barlow, M.D., which arguably supports plaintiff's subjective complaints about pain and limiting effects of carpal tunnel syndrome); Id. at 76-80 (psychological consultative evaluation by non-treating, examining psychologist Dr. Jacqueline Worsley, Psy.D., which arguably supports the plaintiff's subjective testimony as to depression and suicidal ideations); c.f., id. at 68-74 (medical consultative examination by non-treating, examining physician Dr. Keith Cunningham, M.D., who found that plaintiff suffers from carpal tunnel syndrome and depression but

The ALJ considered the plaintiff's inability to pay for medical care and rendered an adverse credibility finding – that the plaintiff did not show good cause for failing to seek medical attention because she was not "too indigent" to afford care. (Doc. 17-2 at 17).

The court concludes that the record in plaintiff's case did not contain sufficient evidence for the ALJ to make an informed decision regarding plaintiff's disability. The incompleteness of the record in large part stems from plaintiff's alleged financial inability to pay for her medical testing and treatment. "When the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, this court will remand for further consideration." Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1268 (11th Cir. 2015) (quoting Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003)) (further citations omitted). "However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists." Id. (citing Ellison, 355 F.3d at 1275).

In this case, the ALJ primarily relied on plaintiff's lack of treatment to find that her carpal tunnel syndrome and depression are not severe impairments. However, the ALJ's decision to discredit plaintiff's testimony in finding that the plaintiff did not have good

---

conclude, without explanation, that the plaintiff is not disabled and has no work restrictions)); Doc. 17-3 at 3-10 (state agent medical consultant form completed by Dr. Sharon Keith, M.D. opining that the plaintiff is not disabled because, in large part, she does not have a history of treatment and Dr. Barlow relied heavily on plaintiff's complaints in his assessment); id. at 11-23 (state agent physical medical consultant on reconsideration form by an unknown evaluator with unspecified credentials who is identified only as "CCG, Ph.D." and who concludes that the plaintiff is not disabled).

cause for her failure to seek medical treatment is not based on substantial evidence and employs improper legal standards.

For the reasons discussed above, reversal and remand for additional proceedings is warranted. In reversing, the court makes a few additional observations.

As an initial matter, the plaintiff's hearing before the ALJ was remarkably brief. The hearing commenced at 10:38 a.m. and concluded at 10:51 a.m.; it lasted for only thirteen minutes. The transcript of the hearing is a scant eight pages long. In contrast, the ALJ's written decision, in which he analyzes only two of the five steps set out in 20 C.F.R. § 404.1520(a)(4)(i-v), is fifteen pages in length, and it is written in single-space format and in a considerably smaller font size than the font used in the hearing transcript (c.f., Doc. 17-2 at 10-24; Doc. 17-2 at 29-36). Brevity is not, in and of itself, a source of concern if the substance of a hearing is sufficient to allow the ALJ to develop a full and fair record. But that did not happen in this case, as the ALJ's insufficient or incomplete questions to the plaintiff on key factual issues, such as the plaintiff's inability to afford medical care, fall well short of the ALJ's duty to develop a sufficient record from which to render a decision based upon substantial evidence, particularly in light of the ALJ's rejection of the plaintiff's hearing testimony as a basis, in part, for finding that the medically determinable impairments of carpal tunnel syndrome and depression are not severe impairments.

With regard to the ALJ's written decision, an ALJ is obligated to provide "a statement of the case … setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." 42 U.S.C. § 405(b)(1). At a minimum, "[w]hat is required is that the ALJ state specifically the

weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ's decision is generally lacking in this respect, and the ALJ's omissions or mischaracterizations regarding the evidence of the plaintiff's inability to afford medical care are not the only selective citations to the administrative record offered by the ALJ to support his findings.

For example, the ALJ determined that the plaintiff's testimony about the "intensity, persistence and limiting effects of [her] symptoms [is] not entirely credible[.]" (Doc. 17-2 at 17). The ALJ first wrote the following with respect to the February 2013 function report:

> The claimant alleged she had extreme manipulative limitations due to bilateral pain and weakness in her upper extremities. However, the [ALJ] notes that the claimant managed to complete an eight-page function report on February 15, 2013 [Doc. 17-6 at 20-27]. The [ALJ] noted that her responses to questions were legible and indicated no weakness or inability to write. The fact that the claimant was capable of completing this form without any apparent difficulty undermined the extreme limitations she asserted she had at the hearing.

(Doc. 17-2 at 17). However, to the contrary, the function report is not entirely legible; several pages contain illegible writing. Also, the ALJ's finding that the plaintiff completed the form "without any apparent difficulty" ignores the plaintiff's written statement that she spent <u>five days</u> completing the form because "[i]t hurts holding this pen to write." (Doc. 17-6 at 27). The ALJ does not mention this evidence, and the plaintiff's explanation that she spent five days filling out an eight-page form because it was painful to write directly contradicts the ALJ's finding that she completed the form "without any

apparent difficulty." The ALJ's conclusion that the form was completed without difficulty is not based upon substantial evidence; to the contrary, there is explicit, unrebutted evidence of the plaintiff's substantial difficulty that the ALJ neglects to mention. Thus, the finding that the plaintiff completed the form without "apparent difficulty" is based on nothing more than the ALJ's conjecture. The ALJ must give full and adequate consideration to pertinent evidence and properly characterize the evidence on which the ALJ relies in support of a determination, whether that finding is favorable or adverse to the plaintiff.

As to the ALJ's finding that the plaintiff's carpal tunnel syndrome and depression are not severe impairments, an impairment is not "severe" at step two if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984); see also Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (An impairment is not severe if it is "mild" and "amenable to medical treatment."); Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (A non-severe impairment is "merely a slight abnormality which has a minimal effect on the general ability to work."). A court is required to consider "whether a reasonable mind could review the [plaintiff's] evidence … and still conclude that the condition had only a minimal effect on her ability to perform the most general and rudimentary functions of a work activity[.]" Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985). Under the "reasonable mind" test, the plaintiff's evidence, if credited by the Commissioner, leads to the conclusion that her pain or depression are not "merely a slight

abnormality." Flynn and Hillsman, *supra*. On remand, the court expects that the ALJ will consider carefully whether he should proceed beyond the second step in light of this decision and additional development of the record.

## CONCLUSION

Accordingly, for the reasons discussed, the decision of the Commissioner will be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) by separate judgment so that the Commissioner can conduct additional proceedings consistent with this opinion. The court does not address the issues raised by plaintiff except as expressed in this opinion. The court expects that the Commissioner will consider plaintiff's arguments as to those issues on remand, and will develop the record as is necessary in areas not expressly considered in this opinion.

DONE, on this the 31st day of March, 2017.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge